UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| TESSA KNOX, PAMELA KASSEN, LAURENTINA CHAPARRO, HILLARY CRANDLE, JOY FUSARO, ALYSSA HICKEY, MARGRET HOLCOMB, MICHELLE ORTIZ, TRIPTI PANDEY, WIJDAN SHOUBAKI, JENA TOBAK, CHRISTINA TORRES, AND ARISSIA TOSSETTI,<br><br>                  Plaintiffs,<br><br>    -against-<br><br>IRONSHORE INDEMNITY INC.,<br><br>                  Defendant. | 21 Civ. 6321 |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

COMPLAINT

Plaintiffs Tessa Knox ("Knox") and Pamela Kassen ("Kassen"), each individually and on behalf of the class that this Court certified in the action *Knox v. John Varvatos Enterprises, Inc.*, 17 Civ. 772 (GWG) ("Varvatos Action") ("Proposed Class"), and Laurentina Chaparro ("Chaparro"), Hillary Crandle ("Crandle"), Joy Fusaro ("Fusaro"), Alyssa Hickey ("Hickey"), Margret Holcomb ("Holcomb"), Michelle Ortiz ("Ortiz"), Tripti Pandey ("Pandey"), Wijdan Shoubaki ("Shoubaki"), Jena Tobak ("Tobak"), Christina Torres ("Torres"), and Arissia Tossetti ("Tossetti") (collectively, "Plaintiffs"), by their undersigned attorneys, for their complaint against Ironshore Indemnity Inc. ("Ironshore"), allege:

Nature of the Action

1. Plaintiffs are bringing this action to recover damages from Ironshore pursuant to § 3420 of the New York State Insurance Law, because (a) Ironshore issued an insurance policy

that provided coverage to John Varvatos Enterprises, Inc. ("Varvatos") for the claims asserted in the Varvatos Action, (b) Plaintiffs obtained judgments against Varvatos in the Varvatos Action totaling $2,862,407.41, and (c) while Plaintiffs have obtained $193,145.53 from Varvatos, Ironshore has failed to pay any amount due to Plaintiffs under the judgments.

## Subject Matter Jurisdiction and Venue

2. This Court has original subject matter jurisdiction over the first, second and third claims in this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the parties to those claims and the amount in controversy exceeds $75,000 exclusive of interest and costs.

3. This Court has subject matter jurisdiction over the fifth and sixth claims in this action pursuant to 28 U.S.C. § 1367 because there is complete diversity of citizenship between the parties to those claims and those claims are so related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in this District.

## The Parties

5. Knox is a natural person and a citizen of the State of California.

6. Kassen is a natural person and a citizen of the State of California.

7. Chaparro is a natural person and a citizen of the State of California.

8. Crandle is a natural person and a citizen of the State of California.

9. Fusaro is a natural person and a citizen of the State of Nevada.

10. Hickey is a natural person and a citizen of the State of Montana.

11. Holcomb is a natural person and a citizen of the State of California.

12. Ortiz is a natural person and a citizen of the State of Nevada.

13. Pandey is a natural person and a citizen of the State of California.

14. Shoubaki is a natural person and a citizen of the State of Texas.

15. Tobak is a natural person and a citizen of the State of Nevada.

16. Torres is a natural person and a citizen of the State of California.

17. Tossetti is a natural person and a citizen of the State of California.

18. Upon information and belief, Ironshore is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business at 175 Berkeley Street, Boston, Massachusetts 02116.

Background of this Action

19. Ironshore is an insurance company, and a wholly-owned direct or indirect subsidiary of Liberty Mutual Company.

20. On or about May 16, 2016, Ironshore issued an insurance policy to Lion Hendrix Corp. & Subs, ("Lion"), a copy of which is annexed as Exhibit A (the "Insurance Policy"). The Insurance Policy provides insurance coverage to Varvatos.

21. On or about February 1, 2017, Knox, a former employee of Varvatos, commenced the Varvatos Action, alleging that Varvatos unlawfully discriminated against its women sales professionals, in violation of the Federal Equal Pay Act ("EPA"), the New York Equal Pay Act ("NY EPA"), and the New York Human Rights Law ("HRL").

22. On or before March 14, 2017, Varvatos tendered the defense of the Varvatos Action to Ironshore.

23. By letter dated March 14, 2017, a copy of which is annexed as Exhibit B, Ironshore, through its agent YorkPro, Inc. ("YorkPro"), promised to provide insurance coverage to Varvatos for the claims in the Varvatos Action, subject to certain limitations that did not, in fact, apply.

24. From March 14, 2017, until at least May 15, 2018, there was significant activity in the Varvatos Action:

    a. Varvatos produced the Insurance Policy as part of its voluntary disclosures;

    b. Knox filed (a) a motion for conditional certification of the EPA claim as a collective action, (b) an amended complaint, (c) a second amended complaint, which added a claim under Title VII of the Civil Rights Act ("Title VII") and (d) a motion for class certification of the NY EPA, Title VII, and HRL claims;

    c. The Court granted the motion for conditional certification as an EPA collective action, by an order entered October 17, 2017;

    d. Chaparro, Crandle, Fusaro, Hickey, Holcomb, Kassen, Ortiz, Pandey, Shoubaki, Tobak, Torres, and Tossetti opted into the collective action; and

    e. The Court granted the motion for class certification by an order entered February 22, 2018, which created a class ("Certified Class"). Because Chaparro, Crandle, Fusaro, Hickey, Holcomb, Kassen, Ortiz, Pandey, Shoubaki, Tobak, Torres and Tossetti did not opt out, they became members of the Certified Class. The class contained 69 members, including Knox.

25. Upon information and belief, in anticipation of its participation in a mediation with Plaintiffs and Varvatos scheduled for May 15, 2018, Ironshore reviewed the litigation in the

Varvatos Action and realized that, as a result of the orders entered October 17, 2017, and February 22, 2018, the Varvatos Action presented substantially more liability to Ironshore than Ironshore perceived at the time Ironshore promised to provide insurance coverage to Varvatos in its March 17, 2017, letter.

26. By letter dated May 10, 2018, a copy of which is annexed as Exhibit C, Ironshore through YorkPro sought to disclaim at least a portion of the insurance coverage that it had previously promised to provide to Varvatos.

27. Neither Varvatos nor Ironshore informed Plaintiffs of Ironshore's attempt to disclaim coverage until after the Court in the Varvatos Action orally denied both parties' motions for summary judgment, on January 15, 2019.

28. In a deposition taken January 10, 2020, Joseph Zorda, the Chief Financial Officer of Varvatos, after consultation with Proskauer Rose LLP, testified that Varvatos believed that Ironshore had an obligation to insure Varvatos with respect to all of the claims in the Varvatos Action.

29. The Varvatos Action proceeded to trial, beginning on February 24, 2020.

30. On February 28, 2020, the jury in Phase I of the trial answered special interrogatories in a manner that represented a complete victory for Plaintiffs.

31. On March 2, 2020, the jury in Phase II of the trial answered special interrogatories that entitled Plaintiffs to liquidated and punitive damages against Varvatos.

32. On March 24, 2020, the Court entered a judgment against Varvatos for $3,516,051.23, plus post-judgment interest.

33. Without satisfying any of the March 24, 2020, judgment, on May 6, 2020, Varvatos filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States

Bankruptcy Court for the District of Delaware. By order dated September 4, 2020, the Bankruptcy Court lifted the automatic stay to allow the Varvatos Action to proceed to judgment.

34. On January 12, 2021, the Court vacated the judgment entered March 24, 2020, and granted Varvatos a new trial unless Plaintiffs accepted a 50% remittitur.

35. On January 25, 2021, Plaintiffs accepted the Court's offer of remittitur.

36. On January 29, 2021, the Court entered an amended final judgment in the amount of $1,758,025.61. Neither party appealed that judgment.

37. On February 17, 2021, the Court entered a judgment in favor of Plaintiffs that, *inter alia*, ordered Varvatos to pay $748,321.21 in attorneys' fees and awarded Knox $20,000 in incentive fees, to be paid out of the January 29, 2021, judgment. On February 24, 2021, Plaintiffs filed an appeal of the attorneys' fees portion of the judgment, which is pending.

38. On April 21, 2021, Ironshore and Plaintiffs engaged in, and completed, a mediation with a mutually selected mediator, but did not resolve the dispute.

39. On June 23, 2021, the Court entered an amended judgment that increased the January 29, 2021, judgment by $140,720.59, and awarded Plaintiffs an additional $215,340.00 in attorneys' fees against Varvatos.

40. The judgments entered on February 17, 2021, and June 23, 2021 (the "Judgments"), entitled Plaintiffs to $2,862,407.41. Knox and Kassen, on behalf of the Proposed Class, claim more than $2,500,000 of the Judgments. Kassen and Fusaro each claim approximately $80,569.42 of the Judgments.

41. On June 23, 2021, counsel for Plaintiffs emailed a copy of the Judgments to Amina Hassan, Esq., Varvatos's counsel of record in the Varvatos Action, and Derek Abbott, Esq., Varvatos's counsel of record in the Varvatos bankruptcy case.

42.     On June 23, 2021, counsel for Plaintiffs emailed a copy of the Judgments to Alexander Truitt, Esq., and Luigi Spadafora, Esq., Ironshore's counsel.

43.     On June 24, 2021, counsel for Plaintiffs sent, by Federal Express, a copy of the Judgments to Varvatos at 134 Spring Street, Suite 502, New York, New York 10012. Varvatos received the Judgments on June 25, 2021.

44.     On June 24, 2021, counsel for Plaintiffs served a copy of the Judgments on Ironshore at its principal place of business, 175 Berkeley Street, Boston, Massachusetts, 02116.

45.     On June 25, 2021, Plaintiffs received a distribution of $193,145.53 from the Varvatos Estate, based upon the pro-rata value of an estimate of their claims, which partially satisfied the February 17, 2021, judgment.

46.     On June 30, 2021, the Varvatos bankruptcy case was dismissed. There is no stay of the Judgments in effect.

47.     Aside from the $193,145.53 distribution received from the Varvatos Estate, $2,669,261.88 of the Judgments remain unpaid and no person has posted any security for any remaining amount of the Judgments.

A FIRST CLAIM FOR RELIEF
(Section 3420 – The Insurance Policy – By Knox, Kassen and Fusaro)

48.     Knox and Kassen, on behalf of themselves and the Proposed Class, and Fusaro repeat the allegations set forth in paragraphs 1 through 47 above with the same force and effect as if set forth in full.

49.     Ironshore has a contractual obligation to pay any judgment in the Varvatos Action, up to the limits of the Insurance Policy.

50.     Ironshore has failed to meet its contractual obligation to pay the remaining amount of the Judgments, up to the limits of the Insurance Policy.

51. The Proposed Class is defined as the members of the class this Court certified in the Varvatos Action.

52. The Proposed Class has a claim under N.Y. Ins. Law § 3420.

53. The Proposed Class is sufficiently numerous that joinder of all members is impracticable. The Proposed Class is comprised of 69 individuals, including Knox.

54. There are questions of law and fact common to all members of the Proposed Class.

55. These questions include, among others, (i) whether the Insurance Policy requires Ironshore to pay the Judgments and (ii) whether any public policy or law prevents Ironshore from providing insurance coverage for the Judgments to benefit Plaintiffs.

56. The claims of Knox and Kassen are typical of the claims of the Proposed Class. Knox and Kassen have a common interest with each member of the Proposed Class.

57. Knox and Kassen will fairly and adequately protect the interests of the Proposed Class. The interests of Knox and Kassen are representative of, coincident with, and not antagonistic to, those of the Proposed Class. Knox and Kassen are represented by competent counsel.

58. The questions of law and fact common to the members of the Proposed Class predominate over any questions affecting only individual members, and a class action would be superior to other available methods for fairly and efficiently adjudicating the controversy.

59. Pursuant to § 3420 of the New York Insurance Law, Knox and Kassen on behalf of themselves and the members of the Proposed Class and Fusaro are entitled to judgment against Ironshore for the remaining amount of the Judgments, up to the limits of the Insurance Policy.

A SECOND CLAIM FOR RELIEF
(Section 3420 – Insurance by Estoppel – By Knox, Kassen and Fusaro)

60. Knox, Kassen and Fusaro repeat the allegations set forth in paragraphs 1 through 59 above with the same force and effect as if set forth in full.

61. By letter dated March 14, 2017, Ironshore promised to provide insurance coverage to Varvatos for the claims in the Varvatos Action, subject to certain limitations that did not apply.

62. In reliance upon the promise of Ironshore to provide insurance coverage to Varvatos for the claims in the Varvatos Action, Varvatos (i) did not change its discriminatory clothing allowance policy, and (ii) failed to make a settlement offer before March 15, 2018, both of which ultimately increased Varvatos's potential damages in the Varvatos Action.

63. In reliance upon that promise, the Proposed Class proceeded with the Varvatos Action.

64. As a result of the representations set forth in the March 14, 2017, letter, the reliance by Varvatos and the Proposed Class upon the fact that Ironshore had promised Varvatos to provide insurance coverage for the claims asserted in the Varvatos Action, and the prejudice resulting from their reliance, Ironshore is estopped from denying insurance coverage for the Judgments.

65. Pursuant to § 3420 of the New York Insurance Law, Knox and Kassen individually and on behalf of the members of the Proposed Class and Fusaro are entitled to judgment against Ironshore for the remaining amount of the Judgments, up to the limits of the Insurance Policy.

A THIRD CLAIM FOR RELIEF
(28 U.S.C. § 2201 – Declaratory Judgment – By Knox, Kassen and Fusaro)

66.     Knox, Kassen and Fusaro repeat the allegations set forth in paragraphs 1 through 65 above with the same force and effect as if set forth in full.

67.     This action presents an actual case or controversy as to whether the Insurance Policy and/or the acts and omissions of Ironshore require Ironshore, under § 3420, to pay the remaining amount of the Judgments, up to the limits of the Insurance Policy.

68.     The Insurance Policy and/or the acts and omissions of Ironshore require Ironshore to pay the remaining amount of the Judgments, up to the limits of the Insurance Policy.

69.     Ironshore denies that the Insurance Policy and/or the actions and omissions of Ironshore require Ironshore, under § 3420, to pay the remaining amount of the Judgments, up to the limits of the Insurance Policy.

70.     Knox, Kassen and Fusaro are entitled to a declaratory judgment pursuant to 28 U.S.C. § 2201 that Ironshore must pay the remaining amount of the Judgments, up to the limits of the Insurance Policy.

A FOURTH CLAIM FOR RELIEF
(Section 3420 – The Insurance Policy – By the Remaining Opt-Ins)

71.     Chaparro, Crandle, Hickey, Holcomb, Ortiz, Pandey, Shoubaki, Tobak, Torres, and Tossetti (the "Remaining Opt-Ins") repeat the allegations set forth in paragraphs 1 through 70 above with the same force and effect as if set forth in full.

72.     Ironshore has an obligation to pay any judgment in the Varvatos Action, up to the limits of the Insurance Policy.

73.     Ironshore has failed to pay any amount of the Judgments.

74. Pursuant to § 3420 of the New York Insurance Law, the Remaining Opt-Ins are entitled to judgment against Ironshore for their share of the Judgments, up to the limits of the Insurance Policy.

## A FIFTH CLAIM FOR RELIEF
(Section 3420 – Insurance By Estoppel – By the Remaining Opt-Ins)

75. The Remaining Opt-Ins repeat the allegations set forth in paragraphs 1 through 74 above with the same force and effect as if set forth in full.

76. By letter dated March 14, 2017, Ironshore promised to provide insurance coverage to Varvatos for the claims in the Varvatos Action, subject to certain limitations that did not apply.

77. In reliance upon the promise of Ironshore to provide insurance coverage to Varvatos for the claims in the Varvatos Action, Varvatos (i) did not change its discriminatory clothing allowance policy and (ii) failed to make a settlement offer to Plaintiffs before May 15, 2018, both of which increased Varvatos's potential exposure in the Varvatos Action.

78. In reliance upon that promise, the Remaining Opt-Ins proceeded with the Varvatos Action.

79. As a result of the promise set forth in the March 14, 2017, letter, and the Remaining Opt-Ins' reliance upon the fact that Ironshore had promised to provide Varvatos with insurance coverage for the claims asserted in the Varvatos Action, Ironshore is estopped from denying insurance coverage for the Judgments.

80. Pursuant to § 3420 of the New York Insurance Law, the Remaining Opt-Ins are entitled to judgment against Ironshore for their share of the Judgments, up to the limits of the Insurance Policy.

WHEREFORE, Plaintiffs demand judgment against Ironshore:

A. Awarding Plaintiffs damages, the precise amount to be determined by the trier of fact in this action;

B. Declaring that Ironshore must pay the Judgments, up to the limits of the Insurance Policy;

C. Awarding Plaintiffs their costs and attorneys' fees in this action; and

D. Granting such other and further relief as to this Court may seem just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury of all issues in this action that are so triable.

Dated: New York, New York
July 26, 2021

DUNNEGAN & SCILEPPI LLC

By *William Dunnegan*
William Dunnegan (WD9316)
wd@dunnegan.com
Richard Weiss (RW4039)
rw@dunnegan.com
Attorneys for Plaintiffs
437 Madison Avenue, 24th Floor
New York, New York 10022
(212) 332-8300