UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                        :
TESSA KNOX, PAMELA KASSEN, LAURENTINA   :
CHAPARRO, HILLARY CRANDLE, JOY FUSARO,  :
ALYSSA HICKEY, MARGRET HOLCOMB,         :          21cv6321 (DLC)
MICHELLE ORTIZ, TRIPTI PANDEY, WIJDAN   :
SHOUBAKI, JENA TOBAK, CHRISTINA         :          OPINION AND ORDER
TORRES, and ARISSIA TOSSETTI,           :
                                        :
                           Plaintiffs,  :
                                        :
               -v-                      :
                                        :
IRONSHORE INDEMNITY INC.,               :
                                        :
                           Defendants.  :
                                        :
-------------------------------------- X

APPEARANCES:

For plaintiffs:
William Irvin Dunnegan
Richard Weiss
Dunnegan & Scileppi LLC
437 Madison Avenue
24th Floor
New York, NY 10022

For defendant Ironshore Indemnity Inc.:
Luigi Spadafora
Alexander A. Truitt
Winget Spadafora & Schwartzberg LLP
45 Broadway
32nd Floor
New York, NY 10006

DENISE COTE, District Judge:

    In this insurance coverage dispute, the plaintiffs, former

employees of John Varvatos Enterprises, Inc. ("Varvatos"), sue

Ironshore Indemnity Inc. ("Ironshore"), Varvatos' insurer, to

collect a judgment (the "Judgment") awarded to them and a class
of former Varvatos employees in another litigation in this
District (the "Underlying Litigation").  Ironshore has moved to
dismiss, claiming that the plaintiffs' claims are barred by the
res judicata effect of a prior action ("Knox I") and that they
in any event fail to state a claim because the express terms of
the insurance policy Ironshore issued to Varvatos mean that
Varvatos is not covered for the conduct that resulted in the
Judgment.  The plaintiffs have moved to certify a class of
Varvatos employees who they claim are entitled to an award from
Ironshore and for summary judgment, contending that Ironshore
is, as a matter of law, obligated to pay the Judgment.  Because
the plain terms of the policy issued by Ironshore make clear
that the conduct leading to the Judgment is excluded from
coverage under the policy, Ironshore's motion to dismiss is
granted.

## Background

This action is not the first case in which this group of
plaintiffs, or a subset, have sought to collect the Judgment
from Ironshore.  In 2020, plaintiffs Knox and Kassen brought
Knox I, and on January 26, 2021, this Court granted Ironshore's
motion to dismiss that case.  Knox v. Ironshore Indemnity Inc.
(Knox I), No. 20cv4401 (DLC), 2021 WL 256948 (S.D.N.Y. Jan. 26,

2021).  The facts set forth in this Opinion are derived from
this Court's Opinion granting Ironshore's motion to dismiss <u>Knox
I</u>, which is incorporated by reference, as well as the
plaintiffs' complaint, documents annexed to the complaint and
incorporated by reference, and other documents properly
considered in conjunction with the cross-motions to dismiss and
for summary judgment.

I.   Varvatos' Illegal Conduct and the Underlying Litigation

    In brief, this case, <u>Knox I</u>, and the Underlying Litigation
all arise out of a discriminatory compensation policy maintained
by Varvatos, a clothing retailer.  Prior to 2005, Varvatos
offered clothing for both men and women, required both male and
female sales employees to wear Varvatos clothing to work, and
gave both male and female employees an allowance to purchase
Varvatos clothing to wear to work.  In 2005, Varvatos
discontinued its women's line, rescinded its requirement that
female sales employees wear Varvatos clothing at work, and
ceased providing a clothing allowance to female sales employees.
Under this policy, male sales employees, but not female sales
employees, were entitled to obtain $12,000 in Varvatos clothes
annually.  The $12,000 clothing allowance was doled out to male
employees in increments of $3,000 per quarter.  This state of
affairs prevailed until some point after 2012, when Varvatos

began to offer to female sales employees, but not male sales
employees, a discount at a related retailer, Allsaints, but
continued to withhold a clothing allowance from female sales
employees.  Under this policy, female sales employees could,
every six months, use their personal funds to purchase up to
$2,500 in clothing from Allsaints at a 50% discount from the
retail price.

On February 1, 2017, plaintiff Knox initiated the
Underlying Litigation against Varvatos in this District,
alleging that Varvatos' policy of providing a clothing allowance
to male sales employees but not female sales employees violated
federal and New York state laws prohibiting pay discrimination.
Tessa Knox v. John Varvatos Enterprises, Inc., No. 17cv772
(GWG).  After motion practice resulting in the certification of
the Underlying Litigation as a collective action under the
federal Equal Pay Act, 29 U.S.C. § 206(d), and a class action
pursuant to Rule 23, Fed. R. Civ. P., the case proceeded to
trial before the Honorable Gabriel Gorenstein.

At trial in 2020, the plaintiffs argued that Varvatos had
violated federal and state law prohibiting pay discrimination by
offering a clothing allowance to male employees, but not female
employees.  In defense, Varvatos' counsel argued, inter alia,
that Varvatos had not engaged in pay discrimination because,

while it did not offer its female sales employees a clothing
allowance, it provided compensation of equivalent value in the
form of the Allsaints discount.  The plaintiffs' counsel argued
that the Allsaints discount is "no more than a coupon," not
"equal or even comparable to the clothing allowance," and not
"worth anything."  The jury found Varvatos liable for violating
federal and New York civil rights law and awarded damages on a
per-employee basis.

Based on the jury's per-employee award and the applicable
rate of pre-judgment interest, the court calculated a judgment
of $3,516,051.23 against Varvatos.  Judgment was initially
entered on March 24, 2020.  Varvatos moved for post-trial relief
under Fed. R. Civ. P. 50 and 59 on April 21.  Judge Gorenstein
granted a motion for a new trial on damages, or in the
alternative remittitur, on January 12, 2021.  The parties agreed
to remittitur, and after additional litigation regarding the
amount of the judgment and attorneys' fees, the Court entered a
final judgment in the total amount of $2,114,086.20 on June 23
(the "Judgment").

II.  The Ironshore Insurance Policy

On May 16, 2016, Ironshore issued to Varvatos a "Directors,
Officers, and Private Company Liability Insurance Policy
Including Employment Practice Claims Coverage."  This policy

required Ironshore to indemnify Varvatos for "Loss" that it incurred as a result of civil litigation resulting from Varvatos' "Wrongful Act[s]" during the term of the policy. "Wrongful Act," in turn, is defined, <u>inter alia</u>, as "any . . . Employment Practices Wrongful Act" by Varvatos.  "Employment Practices Wrongful Act[s]" include "discrimination," "violation of the Equal Pay Act," and "violation of an Employee's civil rights relating to any of the above."

The policy also includes a Prior Acts Exclusion, which provides that Ironshore

> shall not be liable to make any payment for Loss in connection with any [civil litigation] for any Wrongful Act which occurred prior to April 30, 2012. Loss arising out of the same Wrongful Act or Related Wrongful Acts shall be deemed to arise from the first such Wrongful Act.

The term "Related Wrongful Acts" is defined as

> Wrongful Acts which are the same, related, or continuous, or Wrongful Acts which arise from a common nucleus of facts.  Claims can allege Related Wrongful Acts regardless of whether such Claims involve the same or different claimants, Insureds, or legal causes of action.

The insurance policy took effect on April 30, 2016 and expired on April 30, 2017.  The Underlying Litigation commenced on February 1, 2017.

III. History of the Plaintiffs' Litigation against Ironshore

On June 9, 2020, Tessa Knox and Pamela Kassen -- who are also plaintiffs in this action -- brought Knox I against Ironshore.  In Knox I, like this case, they sought to collect from Ironshore the Judgment pursuant to N.Y. Ins. Law § 3420(b) (the "New York direct action statute"), which allows "any person who . . . has obtained a judgment against [an] insured . . . for damages for injury sustained . . . during the life of the policy or contract" to maintain an action against an insurer "to recover the amount of a judgment against the insured."  Knox I was assigned to this Court, and Ironshore moved to dismiss.

On January 26, 2021, this Court held that the plaintiffs had "failed to state a claim for relief under the New York direct action statute" and dismissed Knox I.  2021 WL 256948, at *3.  The Court reached this conclusion for three reasons. First, a precondition to litigation against an insurer under the New York direct action statute is a judgment against the insured, and at the time Knox I was decided, Judge Gorenstein had vacated the judgment in the Underlying Action pending a new trial on damages or an agreement on remittitur.  Id.  Second, the New York direct action statute does not allow a plaintiff to maintain a direct action during a stay of execution of the judgment at issue, and at the time Knox I was decided, the

7

execution of any judgment against Varvatos was stayed because
Varvatos was in the midst of Chapter 11 bankruptcy proceedings
before the United States Bankruptcy Court for the District of
Delaware.  Id. at 2-3.  Finally, the New York direct action
statute required the plaintiffs "to serve both the insurer and
the insured with a copy of the judgment and notice of entry of
the judgment," and the plaintiffs had not pleaded compliance
with this provision.  Id. at 3.  The plaintiffs did not appeal
this Court's decision granting Ironshore's motion to dismiss
Knox I.

On July 26, 2021, the plaintiffs initiated this action,
which was assigned to the Honorable Jed Rakoff.[1]  On August 23,
the plaintiffs moved for partial summary judgment on the issue
of Ironshore's liability under the insurance policy, and on
August 30, the plaintiffs moved to certify in this action a
class of all members of the class certified in the Underlying
Litigation.  Ironshore moved to dismiss on September 7.  The
case was reassigned to this Court on September 13, and on
September 24, each party filed its opposition to its adversary's
respective motions.  All of the motions became fully submitted
on October 4.

---

[1] The plaintiffs allege that they served the Judgment on counsel
for Varvatos and Ironshore on June 23.  The Varvatos bankruptcy
case was dismissed on June 30.

**Discussion**

The plaintiffs have brought this action pursuant to the New York direct action statute, N.Y. Ins. Law § 3420(b).  Ironshore has moved to dismiss.[2]  In order to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "[t]he complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'"  Green v. Dep't of Educ. of City of New York, 16

---

[2] The plaintiffs have also brought claims against Ironshore for insurance by estoppel and for a declaratory judgment -- pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201 -- that Ironshore is obligated to satisfy the Judgment.

The insurance by estoppel claim fails.  This claim is premised on the plaintiffs' assertion that Ironshore represented, in a March 14, 2017 letter from Ironshore to Varvatos in which it agreed to provide coverage for defense of the Underlying Litigation, that it would cover any losses resulting from the Underlying Litigation.  But that letter, which is annexed to the plaintiffs' complaint and is therefore properly considered on a motion to dismiss, expressly reserved "all rights, privileges and defenses . . . under the Policy and at law and/or in equity."  "An insurer may . . . by timely notice, reserve its right to claim that the policy does not cover the situation at issue, while defending the action," Am. W. Home Ins. Co. v. Gjonaj Realty & Mgmt. Co., 138 N.Y.S.3d 626, 630 (1st Dep't. 2020), and the broadly worded reservation of rights in the March 14, 2017 letter thus precludes any claim for insurance by estoppel.  See Globecon Group, LLC v. Hartford Fire Ins. Co., 434 F.3d 165, 176 (2d Cir. 2006) ("When an insurer reserves its right to deny coverage, estoppel and waiver may not be inferred." (citation omitted)).

The plaintiffs' declaratory judgment claim rises and falls with their primary claim under the New York direct action statute because "a plaintiff may not use the Declaratory Judgment Act to create legal rights that do not otherwise exist."  Knox I, 2021 WL 256948, at *4 (citation omitted).

F.4th 1070, 1076–77 (2d Cir. 2021) (quoting <u>Bell Atl. Corp. v.</u>
<u>Twombly</u>, 550 U.S. 544, 570 (2007)).  "In determining if a claim
is sufficiently plausible to withstand dismissal," a court
"accept[s] all factual allegations as true" and "draw[s] all
reasonable inferences in favor of the plaintiffs."  <u>Melendez v.</u>
<u>City of New York</u>, 16 F.4th 992, 1010 (2d Cir. 2021) (citation
omitted).

        "A complaint is deemed to include any written instrument
attached to it as an exhibit or any statements or documents
incorporated in it by reference."  <u>Green</u>, 16 F.4th at 1077
(citation omitted).  The court may also consider documents that
are "the proper subject of judicial notice" in evaluating a
motion to dismiss, so long as it does not consider them "for the
truth of the matters asserted therein."  <u>United States v.</u>
<u>Strock</u>, 982 F.3d 51, 63 (2d Cir. 2020) (citation omitted).
Documents properly subject to judicial notice include public
records.  <u>Bellin v. Zucker</u>, 6 F.4th 463, 472 n. 10 (2d Cir.
2021).  Accordingly, in evaluating Ironshore's motion to
dismiss, the Court takes judicial notice of the existence of
certain filings in <u>Knox I</u>, the Underlying Litigation, and
Varvatos' bankruptcy proceedings in Delaware.

        The parties' respective submissions each present several
issues, but the resolution of one issue presented by Ironshore's

motion to dismiss -- whether the plaintiffs have failed to state
a claim against Ironshore because Ironshore, pursuant to the
Prior Acts Exclusion in the insurance policy it issued to
Varvatos, is not obligated to indemnify Varvatos for the
Judgment[3] -- is sufficient to dispose of this litigation.  For
the following reasons, this Opinion concludes that the Prior
Acts Exclusion bars the plaintiffs' recovery.

    Under New York law,[4] when "an insurer wishes to exclude
certain coverage from its policy obligations, it must do so in
clear and unmistakable language." Beazley Ins. Co., Inc. v. ACE
Am. Ins. Co., 880 F.3d 64, 69 (2d Cir. 2018) (quoting Pioneer
Tower Owners Ass'n v. State Farm Fire & Cas. Co., 12 N.Y.3d 302,
307 (2009)).  "Any such exclusions or exceptions from policy
coverage must be specific and clear in order to be enforced" and
"are to be accorded a strict and narrow construction." Id.

---

[3] Under the New York direct action statute, the plaintiffs "have
no greater rights than [Varvatos] to recover under the policy"
that Ironshore issued to Varvatos.  Knox I, 2021 WL 256948, at
*2 (quoting D'Arata v. New York Cent. Mut. Fire Ins. Co., 76
N.Y.2d 659, 665 (1990)).

[4] While the plaintiffs raise choice of law issues with respect to
certain other issues presented by the parties' cross-motions,
the parties do not dispute that New York law applies to the
issue of whether the Prior Acts Exclusion bars coverage for the
Judgment.  "Under New York choice-of-law rules, where the
parties agree that a certain jurisdiction's law controls, this
is sufficient to establish choice of law." Alphonse Hotel Corp.
v. Tran, 828 F.3d 146, 152 (2d Cir. 2016) (citation omitted).

Thus, when an insurer moves to dismiss a coverage action on the grounds that a policy exclusion applies, the motion to dismiss must be denied "unless it can demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, in toto, are subject to no other interpretation." Dormitory Auth. v. RLI Ins. Co., 143 N.Y.S.3d 31, 33 (1st Dep't. 2021) (citation omitted).

"As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court." White v. Continental Cas. Co., 9 N.Y.3d 264, 267 (2007) (citation omitted). In determining an insurance contract's plain meaning, a court must interpret the contract "according to common speech and consistent with the reasonable expectations of the average insured." Cragg v. Allstate Indem. Corp., 17 N.Y.3d 118, 122 (2011). Even if a term is potentially ambiguous, "established state law," "terms and concepts that are firmly rooted in federal law," or "widespread custom or usage" may allow for "determin[ation of] the meaning of a potentially vague term." Hugo Boss Fashions, Inc. v. Federal Ins. Co., 252 F.3d 608, 617-18 (2d Cir. 2001). Any ambiguities are to be

construed against the insurer.  <u>Dormitory Auth.</u>, 143 N.Y.S.3d at
33.

In this case, Ironshore has argued that the Prior Acts
Exclusion unambiguously excludes coverage for the Judgment
because Varvatos adopted its discriminatory clothing allowance
policy as early as 2005, and the Prior Acts Exclusion precludes
coverage for "Wrongful Acts" occurring before April 30, 2012 and
"Related Wrongful Acts" that occur after April 30, 2012 but "are
the same, related, . . . continuous, . . . [or] arise from a
common nucleus of facts" as those occurring before April 30,
2012.  Ironshore is correct.  Varvatos adopted its
discriminatory clothing allowance policy before April 30, 2012
and maintained it after that date.  The harms that the
plaintiffs suffered arose from the same policy both before and
after April 30, 2012.  And the underlying nucleus of facts that
gave rise to the plaintiffs' causes of action against Varvatos
existed both before that date and after that date.  Under this
broadly worded Prior Acts Exclusion, coverage is therefore
excluded.

In response, the plaintiffs argue that the definition of
"Related Wrongful Acts" is unclear, making the exclusion
ambiguous.  Not so: the policy defines the term as acts that are
the "same," "related," "continuous," or "aris[ing] from a common

nucleus of facts." While this language is broad, these terms are widely used in a variety of legal contexts, and courts are regularly called upon to interpret and apply similar language. See, e.g., Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc., 140 S. Ct. 1589, 1595 (2020) (setting forth a test for the applicability of res judicata that requires courts to determine whether lawsuits "arise from the same transaction" or "involve a common nucleus of operative facts"); United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966) (federal courts have supplemental jurisdiction over state claims when state and federal claims have "a common nucleus of operative fact"). Beyond ipse dixit, the plaintiffs do not provide any reason to conclude that this ubiquitous legal language, assuredly familiar to the commercial actors who are the parties to the insurance policy at issue in this case, is ambiguous.[5]

The plaintiffs also suggest that the Prior Acts Exclusion does not bar coverage for the Judgment because the nature of Varvatos' wrongful acts changed when Varvatos began to offer female sales employees the Allsaints discount in lieu of a clothing allowance. While it may be so that the implementation

---

[5] Other courts in this District have found similarly worded exclusion provisions to be unambiguous. See, e.g., Nomura Holding America, Inc. v. Federal Ins. Co., 45 F.Supp.3d 354, 365 (S.D.N.Y. 2014).

of Varvatos' discriminatory clothing allowance policy changed
somewhat over the period that it maintained a discriminatory
policy, the policy's definition of "Related Wrongful Acts" does
not bar coverage for the insured's wrongful acts only when they
are entirely consistent or repeated identically over a given
period.  Rather, the express language of the provision defines
"Related Wrongful Acts" not only as those that are the "same" or
"continuous," but also those that are "related" or arise from a
"common nucleus of facts."  It is indisputable that Varvatos'
earlier policy of denying a clothing allowance to its female
employees is "related" to or arises from a "common nucleus of
facts" as its subsequent policy of denying a clothing allowance
to its female employees while offering them a discount for
personal purchases at another store.

The plaintiffs also argue that the Prior Acts Exclusion is
ambiguous because the plaintiffs incurred a loss not all at
once, but instead incurred losses quarterly each time male
employees were given an allowance that they were not, and many
of those losses occurred after April 30, 2012.  This argument
misses the mark.  The relevant question is not when the
plaintiffs occurred loss, but rather when Varvatos incurred
loss, because Varvatos is the insured.  Varvatos incurred a loss
after the Judgment was entered.  And for the reasons set forth

15

above, Varvatos' loss as a result of the Judgment imposed in
2021 is unambiguously "related" to and arises from a "common
nucleus of facts" as the discriminatory policy it implemented in
2005.

Moreover, while the plaintiffs now argue that it is
ambiguous whether Varvatos' wrongful act of denying the clothing
allowance to its female employees while offering the Allsaints
discount is related to its earlier wrongful act of denying the
clothing allowance without offering an alternative discount
because, inter alia, of uncertainty regarding the value of the
Allsaints discount, this current litigation position represents
a change in position from the position that the plaintiffs took
at trial in the Underlying Action.  At that trial, Varvatos
invoked as a defense the value of the Allsaints discount, and
the plaintiffs argued to the jury that the Allsaints discount
was worthless.  Given that the plaintiffs prevailed at trial in
part because they convinced the jury that the Allsaints discount
lacked value, they are now judicially estopped from claiming
that the Allsaints discount had value as a means of
circumventing the Prior Acts Exclusion.  Judicial estoppel
prohibits the plaintiffs from, having "assum[ed] a certain
position in a legal proceeding, and succeed[ed] in maintaining
that position," assuming "a contrary position" because their

"interests have changed." <u>Ashmore v. CGI Group, Inc.</u>, 923 F.3d 260, 272 (2d Cir. 2019) (quoting <u>New Hampshire v. Maine</u>, 532 U.S. 742, 749-50 (2001)).

## Conclusion

Because the Prior Acts Exclusion means that the conduct underlying the Judgment is not covered by the insurance policy that Ironshore issued to Varvatos, Ironshore's motion to dismiss is granted. The plaintiffs' motions for partial summary judgment and for class certification are denied as moot. The Clerk of Court shall enter judgment for Ironshore and close this case.

Dated:   New York, New York
         December 10, 2021

                              _____
                                      DENISE COTE
                              United States District Judge

17